Argued and submitted January 28, reversed and remanded March 30, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EDWARD ANTHONY LOPEZ,
*Defendant-Appellant.*

Marion County Circuit Court
08C48643; A141755

250 P3d 984

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Attorney-in-Charge, Criminal Appeals, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Patrick M. Ebbett, Assistant Attorney General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals a judgment of conviction for three counts of first-degree sexual abuse, ORS 163.427, contending, in part, that the trial court erroneously permitted the state to impeach him with a prior felony conviction beyond the 15-year period prescribed in OEC 609(3)(a).[1] On appeal, the resolution of that matter turns on the answer to a single, dispositive question: Is the application of the 15-year period determined by reference to (a) the time that the testimony sought to be impeached is given at trial or (b) some earlier event, *e.g.*, the *initiation* of the criminal or civil proceeding in which that testimony is ultimately given? We agree with defendant that the proper referent is the time at which the testimony is actually given—that is, if more than 15 years has elapsed "since the date of the conviction or of the [witness's] release * * * from the confinement imposed for that conviction," OEC 609(3)(a), then the prior conviction cannot be employed for impeachment purposes. Under that construct, the trial court erred in permitting the state to impeach defendant with his prior felony conviction. Because that error was not harmless, we reverse and remand.[2]

The material facts are procedural and not in dispute. In September 2008, defendant was indicted on three counts of first-degree sexual abuse, involving the alleged abuse of a child. Before trial began on March 9, 2009, the court and the parties addressed whether, if defendant testified, his May 1993 conviction for "intention to distribute cocaine" in Virginia would be admissible to impeach his credibility. The court indicated that defendant could be so impeached because, although the "conviction itself was more than

---

[1] OEC 609(1)(a) provides that evidence that a witness has been convicted of certain crimes, including a crime "punishable by * * * imprisonment in excess of one year under the law under which the witness was convicted" is admissible for the purpose of attacking the witness's credibility. However, evidence of such a conviction is not admissible if "[a] period of more than 15 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date[.]" OEC 609(3)(a).

[2] Our disposition obviates the need to address defendant's contention that "[t]he trial court erred when it allowed the prosecutor to stand between the victim and defendant and physically obstruct the view between them during the victim's direct testimony."

15 years ago," his "release either from prison or parole was within 15 years[.]"

During the state's case-in-chief, complainant testified regarding the alleged instances of abuse. The state did not offer any eyewitness testimony or forensic evidence to corroborate the abuse.

During the second day of trial (March 10), defendant chose to testify in his own defense. Before he testified, he objected to the state's use of his prior conviction for impeachment purposes, contending that the May 1993 conviction was inadmissible because he was released from incarceration near the beginning of 1994, which was more than 15 years before March 10, 2009, the day that he testified at trial in this case. Specifically, defendant's attorney explained:

> "I wanted to object to the use of the prior conviction of [defendant] who will be testifying. It appears that his confinement ended more that 15 years ago from today. The judgment in question was entered on May 13th, 1993. He has advised me that he did seven-and-a-half months incarceration and was released on parole. That would put that right at the first of 15 years, right at the first of this year. So we are outside of that 15 years even for his confinement and I'm prepared to put him on the stand to testify to that."

The trial court then asked defendant when he was "released from parole." Defendant's attorney responded that defendant "characterizes it as being on probation for a year." In other words, defendant indicated that he was released from post-incarcerative supervision near the beginning of 1995, a year after his release from incarceration. Ultimately, the court concluded that, because defendant had been released from post-incarcerative supervision near the beginning of 1995, "he was not released from the offense outside of 15 years"—and, thus, the conviction was admissible.

The state expressed agreement with the trial court's rationale that defendant's conviction was admissible because less than 15 years had elapsed since defendant had been released from his post-incarcerative supervision (albeit more than 15 years had elapsed since his release from incarceration). Further and alternatively, the state suggested that, even if the 15-year period began when defendant was

released from incarceration in early 1994, the conviction was admissible because the criminal proceeding had been initiated (by indictment in September 2008) within 15 years of defendant's release from incarceration. The trial court did not comment on, or endorse, that alternative formulation.

Defendant proceeded to testify. During cross-examination, the following exchange took place:

"[PROSECUTOR:] In 1993, you were convicted of intention to distribute cocaine; is that correct?

"[DEFENDANT:] That's correct, sir.

"[PROSECUTOR:] A Class A felony.

"[DEFENDANT:] Okay.

"[PROSECUTOR:] What state was that in?

"[DEFENDANT:] That was Virginia, sir."

During closing argument, the prosecutor focused the jury's attention on the parties' respective credibility and defendant's prior conviction. He referred to defendant as a convicted felon more than once. Further, the prosecutor told the jury that,

"as jurors, you are allowed to—just as a witness with the defendant, to take into account that he's been convicted of a felony before in deciding whether you're going to believe the girl who hasn't been convicted of a felony or you're going to believe him in this case. That's what it comes down to, who you believe, who do you think is telling the truth. You are allowed to consider that."

The jury found defendant guilty of all three counts. Defendant appeals.

■ On appeal, defendant contends that the trial court erred in admitting the conviction under OEC 609. Defendant's contention rests on two, conjunctive premises: (1) "the 15-year time limit begins to run when a witness is released from prison, not when he is released from supervision"; and (2) "the 15-year time ends on the date that the witness testified, or at least the date that the trial commenced, not the date that the state filed its charging instrument." Further, defendant contends that the error was not harmless because

"[t]he entire case hinged on the jury's credibility determination, and any evidence that called defendant's credibility into question was likely to have affected the verdict."

In response, the state acknowledges that "defendant is correct that the 15-year period should be calculated from the date of release from incarceration and not the date of release from probation or parole[.]" Nevertheless, the state remonstrates that "the conviction was still admissible because defendant was indicted within 15 years from his release from imprisonment."[3] Alternatively, the state contends that any error in admitting the conviction was harmless because, although

"defendant is correct that the case largely boiled down to a credibility contest between [the complainant] and defendant over whether the sexual abuse occurred, defendant's 15-year-old drug conviction was unlikely to have affected the jury's evaluation of the credibility of either witness to the point of altering the jury's verdict."

The parties' contentions on appeal, as in the trial court, concern the proper interpretation of OEC 609. As previously noted, that provision of the evidence code provides, in pertinent part:

"(1) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime:

"(a) Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted[.] * * *

"* * * * *

"(3) Evidence of a conviction under this section is not admissible if:

"(a) A period of more than 15 years has elapsed since the date of the conviction or of the release of the witness

---

[3] Although the specific dates of defendant's release from incarceration and release from post-incarcerative supervision are not fixed in the record, see 241 Or App at 673, the state does not dispute that defendant's release from incarceration occurred more than 15 years before he testified at trial on March 10, 2009.

from the *confinement* imposed for that conviction, which-
ever is the later date[.]"

(Emphasis added.)

More particularly, our legal inquiry reduces to two
questions of statutory construction. *First*, what is the "trig-
ger" for the 15-year period delimited in OEC 609(3)(a)—and,
specifically, does "release * * * from the *confinement*"
(emphasis added) connote release from incarceration, as
opposed to release from post-incarcerative supervision?
*Second*, what is the referent event for the application of the
15-year limitation—*i.e.*, is it the initiation of the action or
prosecution that ultimately gives rise to the putatively
impeached witness's testimony, or is it the actual giving of
that testimony? Obviously, the former is more expansive and
permissive of impeachment than the latter: Under the for-
mer, so long as the criminal prosecution or civil action is ini-
tiated within 15 years of the "triggering" event, then the wit-
ness will be subject to impeachment even if he or she testifies
after the 15-year period has elapsed.

■       In resolving those questions, we adhere to the meth-
odology described in *PGE v. Bureau of Labor and Industries*,
317 Or 606, 859 P2d 1143 (1993), as amplified in *State v.
Gaines*, 346 Or 160, 206 P3d 1042 (2009). In general, "we
examine the text and context of the statute, as well as any
legislative history offered by the parties that, in the court's
determination, is pertinent." *State v. Bassett*, 234 Or App
259, 265, 228 P3d 590, *rev den*, 348 Or 461 (2010). When
interpreting a provision of the Oregon Evidence Code, "the
Legislative Commentary on the * * * Code should be consid-
ered as part of that Code's legislative history." *State ex rel
OHSU v. Haas*, 325 Or 492, 506 n 10, 942 P2d 261 (1997).

We begin with the threshold "trigger" date. We agree
with defendant—as does the state on appeal—that, where a
witness has been incarcerated, the 15-year period begins to
run when the putatively impeached witness was released
from incarceration—and not from when he or she was
released from post-incarcerative supervision. As pertinent
here, OEC 609 provides that evidence of a qualifying convic-
tion is inadmissible if "[a] period of more than 15 years has

elapsed since * * * the release of the witness from the *confinement* imposed for that conviction * * *." (Emphasis added.) Because the term "confinement" is not defined, we turn to its "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. "Confinement" means, *inter alia*, "the act of confining or state of being confined : restraint within limits." *Webster's Third New Int'l Dictionary* 476 (unabridged ed 2002). In turn, the verb "confine" means "to keep in narrow quarters : IMPRISON." *Id.*[4] In light of those definitions, the term "confinement" in OEC 609 unambiguously refers to a witness's incarceration rather than other forms of post-incarcerative supervision.[5]

■ Given that understanding, the trial court erroneously predicated its application of OEC 609 on the incorrect starting point for the 15-year period. The 15-year limitation began to run upon defendant's release from incarceration in early 1994, and not from his subsequent release from post-incarcerative supervision a year later.

Nonetheless, as noted, the state contends that the trial court properly admitted defendant's prior conviction because he was indicted in September 2008, which was within 15 years of his release from incarceration in early 1994. According to the state, the 15-year limitation of OEC 609(3)(a) is properly applied by reference to the date of a defendant's indictment—and not, as defendant contends, to

---

[4] *See also Black's Law Dictionary* 340 (9th ed 2009) (defining "confinement" as "[t]he act of imprisoning or restraining someone; the state of being imprisoned or restrained").

[5] Further, as defendant and the state correctly assert, federal courts have interpreted the term "confinement" in FRE 609(b), the federal analog to OEC 609(3)(a), to mean "incarceration." *See State v. Cunningham*, 337 Or 528, 543 n 6, 99 P3d 271 (2004), *cert den*, 544 US 931 (2005) (reasoning that, where the state evidentiary provision "is essentially identical to and is derived from" the federal evidentiary provision, "[i]t is * * * permissible to look to federal cases in construing its Oregon counterpart"); Legislative Commentary to OEC 609, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 609.02, Art VI-57 (4th ed 2002) (OEC 609 is based on FRE 609). *See also* FRE 609(b) (providing, in pertinent part, that "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the *confinement* imposed for that conviction, whichever is the later date" (emphasis added)); *United States v. Rogers*, 542 F3d 197, 201 (7th Cir 2008) ("[W]e hold that 'confinement' for purposes of the ten-year limit in [FRE] 609(b) does not include periods of probation or parole.").

when a witness testifies at trial. The state posits that to conclude otherwise would allow defendants to manipulate the date that a witness testifies for "strategic advantage."

Defendant counters that adoption of the state's proposed referent—that is, the date of a defendant's indictment—would lead to absurd results and would be contrary to the "rule's rationale." Defendant consequently reiterates that the proper referent, for purposes of OEC 609(3)(a), is "the date that the witness testified[.]"

We conclude that the referent for the 15-year limitation is the date on which the putatively impeached witness actually testifies. Although the text of OEC 609(3)(a) does not explicitly identify the operative event to which the 15-year limitation applies, in the context of OEC 609, subsection (3)(a) functions as a temporal limit on the admission of a qualifying conviction "[f]or the purpose of attacking the credibility of a *witness*." OEC 609(1) (emphasis added). The term "witness" is defined, as pertinent, to mean "one [who] gives evidence regarding matters of fact under inquiry; *specif* : one who testifies or is legally qualified to testify in a cause or to give evidence before a judicial tribunal or similar inquiry." *Webster's* at 2627. Viewed in that light, OEC 609 allows for the admission of qualifying convictions to attack the credibility of a person who testifies at trial.

The legislative history supports that understanding as well. The legislative commentary to OEC 609 states, in part, that "[t]he introductory phrase" of OEC 609(1) "states its purpose. The legitimate end of impeachment is not to show that a person *who takes the stand* is a 'bad' person, but to show that the person cannot be believed." Legislative Commentary to OEC 609, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 609.02, Art VI-57 (4th ed 2002) (emphasis added).

In sum, when OEC 609(3)(a) is viewed in the context of the rule as a whole and in light of the legislative history describing the underlying purpose of OEC 609, we conclude that the legislature intended the 15-year limitation to be applied by reference to when a witness testifies at trial, because it is at that point that the witness's credibility is in issue.

The state's contrary construction is substantially predicated on the following recommendation in Professor Kirkpatrick's treatise on Oregon evidence:

> "Although the beginning date for the calculation of the fifteen-year period is clearly specified by the rule, the ending date is uncertain. The fifteen-year period could be calculated to the date of testimony, the date of commencement of trial, or the date the indictment or complaint was filed. The preferable construction would be to measure the time from the date of commencing the litigation, to avoid any advantage to a party by delay of the trial."

Laird C. Kirkpatrick, *Oregon Evidence* § 609.07, Art VI-73-74 (4th ed 2002).

With respect, we disagree for two reasons. First, there is no support in the text of the rule or the legislative commentary for the view that the initiation of the underlying civil proceeding or criminal prosecution is the operative referent for the 15-year limitation. Second, to the extent that the state's proposed construction is predicated on concerns that "defendants" will manipulate the date that witnesses testify for "strategic advantage," we note that concerns about such gamesmanship to avoid impeachment are hardly unique to criminal or civil defendants—for example, even under the state's proffered approach, the state or a civil plaintiff might defer obtaining an indictment or filing a complaint until after the 15-year limitation had elapsed so as to avoid having one of *its* witnesses impeached. In all events, trial courts are fully capable of policing tactically manipulative attempts to obtain trial setovers.

■ In sum, we conclude that, where a witness has been incarcerated, the 15-year period in OEC 609(3)(a) begins to run when a witness is released from incarceration and ends when the witness testifies at trial. Applying those principles in this case, we conclude that the trial court erred in admitting the evidence of defendant's May 1993 conviction: When defendant testified in March 2009, more than 15 years had elapsed since his release from incarceration in early 1994.

■ However, evidentiary error is not presumed to be prejudicial. OEC 103(1). Thus, we must affirm defendant's convictions if there was "little likelihood" that the evidence

affected the jury's verdict—that is, the error was harmless. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In *Davis*,

> "[t]he Supreme Court further explained that a variety of considerations may properly inform that 'single inquiry,' including 'the nature of the error that occurred below,' *id.*, and the 'context of the legal error.' *Id.* at 33. The court noted, for example, that the erroneous exclusion or admission of evidence would be harmless 'if the particular issue to which the error pertains has no relationship to the jury's determination of its verdict,' *id.* at 32, or if the jury 'would have regarded the * * * evidence as duplicative or unhelpful to its deliberations.' *Id.* at 33. Ultimately, the Supreme Court in *Davis* concluded that the erroneous exclusion was not harmless, because it could not 'say that the excluded statements were merely cumulative of' admitted evidence—and, indeed, 'were qualitatively different than the evidence that the jury heard'—and because 'the excluded evidence goes directly to the heart of defendant's factual theory of the case.' *Id.* at 34."

*State v. Perkins*, 221 Or App 136, 143, 188 P3d 482 (2008) (quoting *Davis*, 336 Or at 32-34) (omission in *Perkins*).

Here, defendant's (non)credibility was at the heart of the state's case. Bluntly: This was essentially a "swearing match" case. During his closing argument, the prosecutor repeatedly highlighted defendant's prior conviction and invited the jury "to take into account that [defendant has] been convicted of a felony before in deciding whether you're going to believe the girl who hasn't been convicted of a felony or you're going to believe him in this case." Under those circumstances, we cannot say that there was little likelihood that the erroneously admitted evidence affected the jury's verdict. Accordingly, the error was not harmless and defendant's convictions must be reversed.

Reversed and remanded.