Submitted November 30, 2010, affirmed August 31, 2011, petition for review denied March 22, 2012 (351 Or 675)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ROBBIE LOUIS ROWLAND,
*Defendant-Appellant.*

Lane County Circuit Court
200812381; A140067

262 P3d 1158

Peter Gartlan, Chief Defender, and Anne Fujita Munsey, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Michael R. Washington, Senior Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge pro tempore.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Defendant appeals a judgment of conviction for one count of theft, ORS 164.055, one count of menacing, ORS 163.190, and two counts of robbery, ORS 164.395; ORS 164.405. He assigns error to the trial court's denial of his motion to exclude impeachment evidence of two prior felony convictions, arguing that use of the prior convictions was time barred under OEC 609(3)(a). That evidence rule provides, in relevant part, that evidence of a prior conviction is not admissible to impeach a witness's credibility where "more than 15 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." The convictions at issue were more than 15 years old when defendant testified at the trial in this case, and more than 15 years had elapsed since defendant was released from his original terms of incarceration on those convictions. However, while on parole for those convictions, defendant served one month of jail time within the 15-year period as a sanction for a parole violation. This case requires us to determine whether that jail time was a qualifying "confinement" for purposes of calculating the 15-year period under OEC 609(3)(a). We conclude that it was and, therefore, affirm.

The relevant facts are undisputed. Defendant stole a camera from an electronics store. He fled on foot from the store, and various people pursued him. During the chase, defendant allegedly made threats that he had a gun. Defendant was subsequently charged with theft, menacing, and two counts of robbery. He admitted to the theft but denied making the threats that formed the basis of the other charges.

Defendant was tried for those charges in August 2008. Before trial, defendant moved *in limine* to prevent the state from impeaching his credibility with evidence of two prior first-degree burglary convictions. The state reported that those convictions were from 1990, and the parties agreed that defendant had served a term of imprisonment for those convictions and was released on parole outside the 15-year period. However, the state asserted that the burglary convictions could nonetheless be used to impeach defendant

because he violated his parole and, although his parole was not revoked, he was sanctioned with jail time "from November of 1993 to December of 1993"—within 15 years of the date defendant testified in this case. The trial court agreed with the state, ruling that it would "allow the state to use the two convictions for burglary in the first degree as impeachable priors if [defendant] does take the witness stand and testifies."

At trial, defendant testified in his own defense. Before testifying, defendant renewed his objection to the use of his prior burglary convictions as impeachment evidence. The court adhered to its earlier ruling. Defendant noted for the record that he would have to bring out those convictions on direct examination, but "only * * * because of [the trial court's] ruling that those could be used as impeachment evidence." Defendant subsequently testified to his prior burglary convictions and other convictions that were not disputed to be admissible. Ultimately, the jury convicted defendant of all counts.

On appeal, defendant contends that the trial court erred in admitting his prior burglary convictions under OEC 609(3)(a) because the jail time he served while on parole for those convictions was not "the confinement imposed for that conviction." Specifically, defendant argues that the legislature's use of the definite article "the" ("the confinement") indicates that it intended "confinement" to mean only a single, initial term of imprisonment and not subsequent "intermediate sanctions." Defendant further argues that, because OEC 609 as a whole applies only to convictions for crimes, see OEC 609(1) ("[E]vidence that the witness has been convicted of a crime shall be admitted * * *."), it is unlikely that the legislature intended lesser sanctions or violations to, in essence, extend the period for which prior convictions are relevant to a witness's credibility.

The state responds that, because defendant was sentenced under the "matrix system," he was still serving indeterminate sentences for his burglary convictions at the time he was on parole. The state reasons that any time spent in custody while those sentences were still in effect was "based on the original sentence imposed for the crime" and therefore

should qualify under OEC 609(3)(a) as "confinement imposed for th[ose] conviction[s]."

The parties' contentions about the meaning of OEC 609(3)(a) present a question of statutory construction. In construing a statute, we examine the text of the statute in context, along with any relevant legislative history, to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). OEC 609 provides, in relevant part:

"(1)  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime:

"(a)  Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or

"(b)  Involved false statement or dishonesty.

"* * * * *

"(3)  Evidence of a conviction under this section is not admissible if:

"(a)  A period of more than 15 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date[.]"

We recently interpreted the term "confinement" in OEC 609(3)(a). *See State v. Lopez*, 241 Or App 670, 676-77, 250 P3d 984 (2011). In *Lopez*, the trial court had calculated the 15-year period from the date the defendant was released from parole rather than the date he was released from prison. On appeal, we addressed whether "release from confinement" could mean release from post-incarcerative supervision (such as parole) rather than release from incarceration. We concluded, based on the plain meaning of the text, that "the term 'confinement' in OEC 609 unambiguously refers to a witness's incarceration rather than other forms of post-incarcerative supervision." *Id.* at 677 (footnote omitted). However, we did not address whether "confinement" could include periods of incarceration imposed for violations of parole. We are now confronted with that question.

The text of the statute provides that the 15-year period begins to run from the later date of either the conviction or "the release of the witness from the confinement imposed for that conviction." Although the statute refers to "the confinement," we do not agree with defendant that the legislature thereby intended to refer only to a single confinement. The article "the" is "used as a function word before a noun to limit its application to that specified by a succeeding element in the sentence, esp. a subordinate clause, prepositional phrase, or infinitive phrase ‹ [the] flowers that bloom ›." *Webster's Third New Int'l Dictionary* 2369 (unabridged ed 2002). Thus, as applied to the statute, "the" functions to limit the noun "confinement" to incarceration imposed *for that conviction, i.e.,* for the original impeachable conviction, and not some other conviction. It does not, by its plain meaning, limit that confinement to a single term of incarceration.

The question remains, however, whether the "confinement imposed for that conviction" encompasses jail time served for violations of parole. That type of jail time is a form of incarceration and thus is unquestionably "confinement" within the meaning of OEC 609. Whether that jail time is imposed "for [the original] conviction" is a more difficult question. "For" in this context most likely means "because of" or "on account of." *Webster's* at 886. Applying that definition to the statute, the meaning of "for [the original] conviction" is ambiguous. On the one hand, incarceration imposed "because of" or "on account of" the original conviction could refer narrowly to incarceration imposed as punishment on the original conviction. That interpretation would likely exclude incarceration served on a parole sanction (short of revocation) because that incarceration is imposed to punish a violation of the conditions of parole and not the misconduct of the original offense. On the other hand, incarceration imposed "because of" or "on account of" the original conviction could refer more expansively to any confinement imposed as a result of the original conviction—that is, any confinement that has a causal connection to the original conviction. That interpretation would arguably include incarceration imposed for parole sanctions because, absent the original conviction, there would be no basis for the confinement.

The context provides some clarification. OEC 609 was enacted when the indeterminate sentencing scheme, or "matrix system," was in effect. *See* Or Laws 1977, ch 372, §§ 2-6 (describing matrix system). Under the matrix system, an offender was given an indeterminate sentence, which set the maximum term of incarceration the offender could serve. The parole board, in turn, fixed the actual length of incarceration by assigning an initial parole release date within a matrix range. *See Hamel v. Johnson*, 330 Or 180, 185-86, 998 P2d 661 (2000) (explaining system). The board retained authority over an offender until the end of the indeterminate sentence. In the event of a parole revocation, the board could order that the offender return to prison and serve the balance of his indeterminate term. ORS 144.343(2)(b); *cf.* ORS 144.343(2)(c), ORS 144.106 (describing sanctions short of revocation).

The state argues that, under the matrix system, any confinement imposed during the indeterminate sentence would be "based on the original sentence" and therefore should qualify under OEC 609(3)(a) as "confinement imposed for th[ose] conviction[s]."[1] We reject the notion that an ongoing indeterminate sentence somehow renders any confinement imposed during that time "for [the original] conviction." The effect of a parole revocation may be to force a defendant to serve the full term of incarceration on his or her underlying offense. However, where parole is not revoked, but the defendant is merely sanctioned with a term of incarceration, he or she is not forced to serve time on the underlying offense; rather, the defendant serves a separate sanction for the parole violation. Thus, although the context lends some support for the notion that incarceration served pursuant to a parole *revocation* is "confinement imposed for [the original] conviction," it does not suggest that jail time served as a parole *sanction* is a qualifying confinement under OEC 609.

The legislative history does not directly address the question before us. It merely sheds light on the purposes of the 15-year limitation: "The Legislative Assembly believes that considerations of fairness and relevancy demand that

---

[1] The state concedes that a different result would obtain under the sentencing guidelines currently in use.

some time limit be recognized. Subsection (2) [now (3)] provides that upon the expiration of 10 [now 15] years from the later of the date of conviction of a witness or the witness' release from confinement for the offense, the conviction may no longer be used for impeachment." Legislative Commentary to OEC 609, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 609.02, 500 (5th ed 2007). *See also* Advisory Committee Commentary, Proposed Evidence Code, 226 (1979) ("The advisory committee was of the view that after 10 years following a person's release from confinement (or from the date of his conviction) the probative value of the conviction with respect to the person's credibility diminished to a point where it should no longer be admissible.").

Consequently, we must resort to relevant maxims of construction to discern the statute's intended meaning. The relevant maxim here is that "we are to construe the language of a statute in a manner that is consistent with its purpose; in conducting that inquiry, we are guided by what the legislature or the courts have identified as the broader purpose of the statute." *State v. Branam*, 220 Or App 255, 263, 185 P3d 557, *rev den*, 345 Or 301 (2008).

OEC 609 permits the admission of certain prior convictions in order to impeach the credibility of a witness. "The legitimate end of impeachment is not to show that a person who takes the stand is a 'bad' person, but to show that the person cannot be believed. Not all crimes are equally relevant to this purpose[.]" Legislative Commentary to OEC 609, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 609.02, 493-94 (5th ed 2007) (citation omitted). Just as the legislature determined that crimes of a certain type are not relevant to a person's credibility, the legislature also determined that crimes of a certain vintage are not relevant to a person's credibility: "The Legislative Assembly believes that considerations of fairness and relevancy demand that some time limit be recognized." *Id.* at 500. In other words, the tarnishing effect of a prior conviction on a person's credibility diminishes over time. However, the legislature chose to measure that time from the later of the date of the conviction or the date of release from incarceration. Thus, a person's credibility is rehabilitated not merely by the passage of time but by time spent outside incarceration.

In sum, the statute is concerned with limiting impeachment evidence to those convictions that bear on a person's ability to testify truthfully. A conviction no longer bears on a person's credibility when they spend 15 years outside incarceration. The implication is that reconfinement pursuant to a parole violation interrupts rehabilitation and resets the 15-year clock., *i.e.*, a parole violation suggests that the offender was not rehabilitated following the original conviction that gave rise to credibility concerns.

The purpose of the statute, however, provides no basis for distinguishing between confinement imposed for parole revocations and confinement imposed for parole sanctions—either could potentially reflect on a person's credibility or otherwise demonstrate that the dishonesty implicated by the original conviction persists. Thus, the purpose of the statute indicates that the more plausible construction of the text, and the one likely intended by the legislature, is that "confinement imposed for that conviction" refers to any confinement that has a causal connection to the original conviction.

In light of the foregoing, we conclude that reincarceration pursuant to a parole violation is "confinement imposed for that conviction" within the meaning of OEC 609(3)(a). That interpretation comports with the text and purpose of the statute. Accordingly, the trial court did not err in denying defendant's motion to exclude the evidence of his two prior burglary convictions because those convictions fell within the 15-year period in OEC 609(3)(a).

Affirmed.