Argued and submitted December 14, 2011, reversed and remanded July 18, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LUCINDA S. HITES-CLABAUGH,
*Defendant-Appellant.*

Marion County Circuit Court
08C48426; A146356

283 P3d 402

Mark J. Geiger argued the cause and filed the brief for appellant.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Margaret H. Leek Leiberan and Jensen & Leiberan filed the brief *amicus curiae* for the American Civil Liberties Union Foundation of Oregon.

Before Brewer, Presiding Judge, and Haselton, Chief Judge.*

---

* Haselton, C. J., *vice* Gillette, S. J.

BREWER, P. J.

**BREWER, P. J.**

Defendant was convicted after a jury trial of first-degree sexual abuse. ORS 163.427. On appeal, she argues that that the trial court erred in (1) allowing a witness to whom the complainant disclosed abuse to testify without the requisite 15 days' notice being given pursuant to OEC 803(18)(a)(b), (2) refusing to allow defendant's expert witness to testify concerning protocols for child sexual abuse investigations and about pedophile grooming behaviors, and (3) denying her motion for a new trial based on newly discovered evidence. In addition, defendant argues that the court erred in imposing a statutorily mandated minimum sentence of 75 months' imprisonment under ORS 137.700, on the ground that such a sentence violates the proportionality provision of Article I, section 16, of the Oregon Constitution. As explained below, we agree with defendant that the trial court erred in excluding the proffered expert testimony concerning child sexual abuse investigation protocols and that the error was prejudicial. Our resolution of that issue obviates the need to discuss any of defendant's remaining assignments of error. Accordingly, we reverse and remand.

On May 12 through 14, 2008, the regular teacher was absent from her third-grade class at an elementary school in Woodburn, where the complainant was a student. On May 13, defendant worked as a substitute teacher in that classroom. After the morning recess, defendant took the class to restrooms that were around the corner from a hall where second-grade classrooms were located. The students lined up to use the restrooms and went into the restrooms in small groups.

According to the state's evidence, defendant singled out one female third-grade student, the complainant, and led her around the corner to the hall on which the second-grade classrooms were located. Defendant closed one of the fire doors in that hall, thus partially shielding herself and the complainant. Defendant told the complainant that she was "great at everything" she did, then used her right hand to grab the complainant's crotch over the complainant's clothing for approximately one minute. During that time, defendant used her left hand to hold the fire door closed or

to grasp the complainant's pants to hold her in place. The complainant tried to push defendant's hand away but was not strong enough. After one minute, defendant released the complainant and returned to the restroom area. The following day, defendant returned to teach the same class; at some unspecified point during the day, she told the complainant "not to tell anyone." The day after that, the regular third-grade teacher returned, and defendant served as a substitute teacher in a different classroom.

On the day that the regular third-grade teacher returned, the complainant asked to speak with her and reported to her that a substitute teacher had touched her inappropriately between the legs. The teacher repeated the report to the school principal, as well as to the Department of Human Services. Woodburn Police Officers Potter and Hendricks arrived to investigate; when the school principal went to get the complainant, she disclosed details of the offense to the principal. The principal then escorted the complainant into her office, and she remained there while Potter questioned the complainant concerning the report of abuse. The complainant then disclosed details of the abuse to Potter. Potter also talked to the teacher who had initially reported the abuse. Potter determined that defendant had been the substitute teacher in the third-grade classroom for the two previous days; he then talked briefly with defendant, who was present at the school teaching in a different classroom that day. Defendant denied that any abuse had occurred. Potter did not view the area where the complainant reported that the offense occurred, nor did he speak with any other teachers or students at the school. Thus, the state's case consisted of the testimony of the complainant—who did not know the name of the substitute teacher who had perpetrated the abuse and did not identify defendant at trial—the third-grade teacher to whom the complainant had originally disclosed the abuse, the principal to whom the complainant had disclosed the abuse, and Potter, to whom the complainant also had disclosed the abuse.

Before trial, defendant sought an *in limine* ruling on the admissibility of testimony of a psychologist, Kevin McGovern, to the effect that pedophiles commonly seek

out privacy and engage in grooming behaviors with their victims. The state argued that this was inadmissible "profile" evidence.[1] The court expressed doubts that such evidence would be helpful to the jury, and stated that it was disinclined to admit the evidence during defendant's case-in-chief unless it was to rebut evidence offered by the state. The court indicated that it would reserve ruling on that issue until the state had concluded its case.

During the state's case-in-chief, defense counsel cross-examined Potter concerning the adequacy of his investigation of the allegation of abuse. Potter acknowledged on cross-examination that he was aware of guidelines for interviewing witnesses, but he indicated that he had no specialized training concerning Marion County's child abuse investigation protocols and little experience involving child sexual abuse cases. He acknowledged that there were protocols in place for such investigations in Marion County, but indicated that, because he was not on the county's multidisciplinary team for investigation of child abuse, he was not trained in those protocols. Potter acknowledged that his training log showed that he had received training in child sexual abuse investigation, but he nevertheless testified that he was not familiar with the Oregon Department of Justice's Interviewing Guidelines Manual that was created for use by state law enforcement and child abuse multidisciplinary intervention teams.

After the state rested, defense counsel renewed his request to admit McGovern's testimony. The trial court indicated that nothing in the state's case-in-chief had caused it to revisit its tentative conclusion that the evidence was inadmissible. Defense counsel then stated that she wished to call McGovern "as an expert on the necessity to use protocols that have been promulgated by the State of Oregon in sex abuse cases." The state objected, noting that that issue had not been raised at the preliminary hearing at which McGovern's testimony was discussed and that the state therefore had not sought out a rebuttal witness

---

[1] The parties also discussed at length whether or not a scientific foundation needed to be laid for this type of expert testimony—an issue that evenly divided this court in *State v. Stafford,* 157 Or App 445, 972 P2d 47 (1998), *rev den,* 329 Or 358 (1999)—but the trial court did not reach that question.

on that subject. Defense counsel responded that she did not know until she had cross-examined Potter that he was unfamiliar with the protocols for interviewing child sexual abuse victims. The trial court ruled that McGovern would not be permitted to testify on the grounds that (1) counsel should have anticipated the need for the proffered evidence before trial, (2) the protocols were inapplicable because Potter worked for the City of Woodburn rather than Marion County, and they were irrelevant because Potter testified that he was not familiar with them, and (3) "it is not something that an expert witness can testify about. It's either the law or it isn't." The court further indicated that, if counsel could provide statutory authority for the use of the protocols in question, then it would consider giving a jury instruction concerning them.

Defendant's case consisted of her testimony denying that the abuse had occurred, as well as the testimony of numerous character witnesses. The case was submitted to the jury, which, after a short deliberation, returned a 10-2 guilty verdict. In post-trial motions, defendant raised numerous issues pertaining to sentencing and newly discovered evidence. In light of our resolution of the foregoing evidentiary issue, however, we need not address those issues in detail.

We turn to defendant's challenge to the trial court's exclusion of McGovern's testimony about child sexual abuse investigation protocols. Defendant asserts that, contrary to the trial court's ruling, that proffer was a proper subject for expert testimony. The state responds that the trial court properly excluded the evidence for numerous reasons, including that (1) defendant had failed to raise the issue pretrial and, as a result, the state was prejudiced because it had not arranged for a rebuttal expert on the topic; (2) the trial court correctly determined that the subject was appropriate for a jury instruction, but not evidence; and (3) the testimony was unnecessary because the investigating officer had already testified about his lack of knowledge of the protocols. The state also suggests that defendant's offer of proof at that point in the proceedings was inadequate.

We first address the state's procedural and preservation arguments. Initially, we reject the state's argument that defendant was foreclosed from raising this issue at the beginning of her case-in-chief on the ground that the trial court had indicated that it wished to resolve issues pertaining to expert testimony at a pretrial hearing. We note that the state did not argue, nor did the trial court find, that defendant's failure to earlier disclose the substance of McGovern's testimony about the protocols constituted a discovery violation under ORS 135.835(2) that would furnish a ground for excluding his testimony under ORS 135.865. In this case, there is no issue concerning the timeliness of defendant's pretrial disclosure of her intention to call McGovern as an expert witness. Rather, the parties focus their arguments on the timeliness of defendant's disclosure of the need to adduce testimony from McGovern respecting a particular subject matter, namely, the protocols.

When Potter testified about his investigation, defense counsel cross-examined him about whether he had been trained in protocols for investigating child sexual abuse cases. Potter indicated that he had general training in interviewing at the police academy and, after being cross-examined about entries in his training log, acknowledged that he had gone to a training involving child abuse protocols approximately two years earlier. He indicated that the class concerned establishing rapport with child victims, but he denied any knowledge of the specific child abuse investigation protocols promulgated by the Oregon Department of Justice. When asked about the child abuse investigation protocols for Marion County, Potter replied:

> "I'm not on the multidisciplinary team for Marion County as far as the child abuse team. So as far as these particular guidelines, if you are asking if I followed every page in this book during my investigation, I'm going to say no[.]"

As noted, defense counsel used Potter's training log to try to establish that, in fact, he *had* received training on child sexual abuse investigation protocols. In light of Potter's testimony on cross-examination that he was unfamiliar with child abuse investigation protocols despite having

attended a class on that subject several years earlier, it is difficult to perceive how defense counsel could have been expected to anticipate the need for the proffered testimony earlier in the proceedings. If Potter had been familiar with the protocols, it is possible that, in further cross-examining Potter, defense counsel could have established the points that she sought to make through McGovern without the need for expert testimony on the subject.

It is true that the trial court had discretion to determine significant evidentiary issues at a pretrial hearing. ORS 135.037. However, where, as here, the need for the particular evidence at issue was not reasonably apparent to defense counsel before Potter had testified, we conclude that the court did not properly exercise its discretion in excluding the proffered testimony. In particular, the record does not reflect that the state would have had any significant difficulty in securing a witness who was familiar with the application of the protocols for purposes of rebuttal. Accordingly, we reject the state's suggestion that the trial court properly excluded the proffered testimony on the ground that defendant should have raised the issue at the pretrial hearing.

We turn to the state's preservation argument. OEC 103(1)(b) provides that error may not be predicated on a ruling excluding evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." The context here makes it apparent that the court and counsel were aware that the child abuse investigation protocols at issue were those adopted by Marion County's multidisciplinary child abuse team and those promulgated by the Oregon Department of Justice for use by county multidisciplinary child abuse teams. *See generally* ORS 418.746 (establishing Child Abuse Multidisciplinary Intervention programs on state and county levels); ORS 418.747 (counties shall develop a written protocol for investigation of child abuse cases). As noted, counsel told the court that she wanted McGovern to testify "as an expert on the necessity to use protocols that have been promulgated by the State of Oregon in sex abuse cases." An offer of proof need not be in the form of actual testimony by the witness in question, "it is sufficient for the

defense counsel to tell the judge what evidence is expected to be presented." *State v. Nelson*, 246 Or App 91, 98, 265 P3d 8 (2011) (citing *State v. McClure*, 298 Or 336, 341, 692 P2d 579 (1984)). In short, the court knew what protocols were at issue, and counsel explained to the court that the expert was prepared to testify about why the use of such protocols was important. We conclude that defendant adequately preserved her claim of error.[2]

We turn to the merits of that claim. By way of background, we note that the Oregon Supreme Court has, in the context of deciding a Confrontation Clause challenge relating to an investigation of child sexual abuse, discussed at length the statutes that pertain to child abuse investigation protocols. In *State ex rel Juv. Dept. v. S. P.*, 346 Or 592, 616-17, 215 P3d 847 (2009), the court stated:

> "ORS 418.783 establishes the [Child Abuse Multidisciplinary Intervention (CAMI)] program as a part of the Department of Justice. That program serves the following purposes, listed under ORS 418.783(1):
>
> " '(a) Establish and maintain a coordinated multidisciplinary community-based system for responding to allegations of child abuse that is sensitive to the needs of children;
>
> " '(b) Ensure the safety and health of children who are victims of child abuse to the greatest extent possible; and
>
> " '(c) Administer the grant programs established under ORS 418.746 and 418.786.'
>
> "The 'grant programs established under ORS 418.746' exist in order to fund, from money appropriated to the Department of Justice, multidisciplinary teams (MDTs) at the county level.
>
> "* * * * *
>
> "ORS 418.747, in turn, describes the requirements of those MDTs. Subsection (1) provides that the district

---

[2] Furthermore, when a trial court "excludes an entire class of evidence by declaring, in advance, that it is inadmissible as a matter of law, the ruling renders a further offer [of proof] futile." *State v. Olmstead*, 310 Or 455, 461, 800 P2d 277 (1990). Here, as noted above, the trial court declared that this entire topic was not a proper subject for expert testimony, but instead was a matter of jury instruction. Thus, the court appears to have excluded the "entire class of evidence."

attorney of each county is responsible for developing those teams and that they shall consist of:

> "'law enforcement personnel, Department of Human Services child protective service workers, school officials, county health department personnel, county mental health department personnel who have experience with children and family mental health issues, child abuse intervention center workers, if available, and juvenile department representatives, as well as others specially trained in child abuse, child sexual abuse and rape of children investigation.'
>
> "Subsection (2) requires the teams to develop a written protocol 'for immediate investigation of and notification procedures for child abuse cases and for interviewing child abuse victims.'"

To summarize, those statutes provide that the Oregon Department of Justice administers a program, the purpose of which is to maintain a coordinated multidisciplinary community-based system for responding to allegations of child abuse. Those statutes further require that, at the county level, each district attorney must develop a team that includes, among others, "law enforcement personnel *** [and] school officials *** as well as others specially trained in child abuse, child sexual abuse and rape of children investigations." ORS 418.747(1).

Moreover, ORS 418.747 further provides:

> "(3) Each [county] team member *and* the personnel conducting child abuse investigations and interviews of child abuse victims *shall be trained* in risk assessment, dynamics of child abuse, child sexual abuse and rape of children and legally sound and age appropriate interview and investigatory techniques.
>
> "(4) *All* investigations of child abuse and interviews of child abuse victims shall be carried out by appropriate personnel using the protocols and procedures called for in this section."

(Emphasis added.)

Those provisions refute the trial court's reasoning that evidence concerning child abuse investigation protocols was inapplicable because the investigating officer worked

for the City of Woodburn rather than Marion County, as well as the state's suggestion that defendant's proffered expert testimony was irrelevant because the investigating officer had already testified about his lack of knowledge of the protocols. Read together, ORS 418.747(1), (3), and (4), indicate that all law enforcement personnel in a county shall conduct child abuse investigations pursuant to the protocols developed by the county's multidisciplinary team. Evidence of what the terms of the protocols are, as well as evidence that they were not followed in this case, was relevant to defendant's theory that the investigation in this case was inadequate in various respects. *See, e.g.*, *State v. Morgan*, 251 Or App 99, 284 P3d 496 (2012) (in a DUII prosecution, the trial court erred in refusing to allow the defendant to present evidence concerning investigating officers' knowledge of provisions contained in the National Highway Traffic Safety Administrations Field Sobriety Test Instructor's Manual); *State v. Bumgarner*, 219 Or App 617, 634, 184 P3d 1143, *rev den*, 345 Or 175 (2008), *cert den*, 555 US 1101 (2009) (evidence of improper interview techniques is properly presented to the trier of fact); *cf., State v. West*, 145 Or App 322, 326, 930 P2d 858 (1996), *rev den*, 326 Or 43 (1997) (court properly admitted evidence that, based on observing officer's training, field sobriety tests "were administered in accordance with protocols").

The question remains whether expert testimony on that topic is admissible. Expert testimony is admissible if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." OEC 702. As the Supreme Court noted in *State v. Southard*, 347 Or 127, 142, 218 P3d 104 (2009), "depending on the foundation and the purpose for which the testimony is offered, expert testimony regarding aspects of child sexual abuse with which a lay person ordinarily would not be familiar may be admissible." That observation applies with equal force to the issue before us. Just as there are aspects of the phenomenon of child sexual abuse with which a lay person ordinarily would be unfamiliar, there may be aspects of the *investigation* of child sexual abuse complaints with which a lay person would be unfamiliar. We conclude that, because evidence was proffered from which a trier of fact

could determine that statutorily mandated investigation protocols were not followed, defendant was entitled to present evidence not only of the existence and details of those protocols, but also to adduce expert testimony concerning *why* adherence to such protocols is important. To the extent that the trial court excluded the proffered evidence on the ground that the subject could be addressed by means of a jury instruction, but not evidence, the court erred.

The question, then, is whether the error is reversible error. Evidentiary error does not require reversal unless it is prejudicial. OEC 103(1). We will therefore affirm a conviction despite evidentiary error if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). One aspect of that inquiry involves whether the improperly excluded evidence was merely cumulative. Here, as noted, the jury heard evidence that there were protocols in existence regarding the investigation of child sexual abuse and that the investigating officer was not familiar with those protocols. Neither of the other witnesses to whom the child talked were trained in the investigation of child sexual abuse. As noted, the state's case was limited to the testimony of the complainant and the three people to whom she had made disclosures, none of whom followed established investigation protocols in interviewing the complainant about what had occurred. The proffered evidence was not in any way cumulative to other evidence.

Another consideration under *Davis* is the extent to which the evidence at issue would be helpful to the jury's deliberations. *Id.* at 33. In this case, there were no eyewitnesses and no physical evidence. In short, there was a "swearing match" between the complainant and defendant about whether the event described by the complainant had occurred. Thus, the credibility of the complanant's report of the crimes—and by extension the investigation by those who investigated that report—was highly relevant to the ultimate issue that the jury was required to decide. *Cf. State v. Lopez*, 241 Or App 670, 680, 250 P3d 984 (2011) (improperly admitted evidence of prior conviction was deemed prejudicial in what "was essentially a 'swearing match' case"). We also consider "the role that the erroneously excluded evidence

played in the proponent's theory of the case." *State v. Hren*, 237 Or App 605, 609, 241 P3d 1168 (2010). Here, the defense theory of the case was that the event described by the victim simply did not occur, that the investigating officer was not trained in investigating allegations of child sexual abuse, and that as a result, his investigation was markedly deficient. The excluded evidence went to the heart of defendant's theory of defense. In those circumstances, the exclusion of the evidence was prejudicial.

Reversed and remanded.