Argued and submitted January 30, affirmed June 14, petition for review denied November 28, 2017 (362 Or 208)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## NIAZ MOHAMMED KHOSHNAW,
*Defendant-Appellant.*

Washington County Circuit Court
C120654CR, C122876CR;
A159107 (Control), A159108

399 P3d 1083

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

## SHORR, J.

Defendant appeals a judgment of conviction for murder with a firearm, ORS 163.115, and tampering with a witness, ORS 162.285. Defendant raises eight assignments of error. We write to discuss only defendant's last assignment and reject the remainder without discussion. In that assignment, defendant contends that the trial court erred by excluding his expert witness, a reserve police officer with an extensive background in police tactics and use of force. As explained below, however, defendant fails to sufficiently identify the testimony that he argues was improperly excluded, and, as a result, we are unable to determine whether the trial court erred. Accordingly, we affirm.

This case arises from defendant's fatal shooting of a rival gang member, a fact neither party disputes. At trial, the only question was whether defendant shot the victim in self-defense, as he claimed, or as an act of premeditated murder, as the state claimed. Defendant was arrested several months after the shooting and was charged with murder with a firearm, ORS 163.115. While in jail awaiting trial, defendant solicited the murder of two witnesses in the case and was subsequently charged with tampering with a witness, ORS 162.285. The two cases were consolidated for trial.

Prior to trial, defendant provided the state with notice that he intended to call an expert witness, Bedard. Bedard, a reserve police officer, presented himself as an expert in the "use of force and defensive tactics." In a pretrial report, he concluded that, based on his review of the evidence and an interview he conducted with defendant, there was "a greater likelihood" that defendant killed the victim in self-defense. At the heart of Bedard's analysis was his assertion that certain physiological responses associated with the body's fight-or-flight response could indicate whether a person had committed a killing in self-defense or in an act of premeditated murder.

The state moved to exclude Bedard as a witness, and the trial court held a hearing under OEC 104[1] to determine the admissibility of his testimony. Bedard testified at

___

[1] OEC 104 states, in part, that "[p]reliminary questions concerning the qualification of a person to be a witness * * * shall be determined by the court," and

length at that hearing. Prior to that testimony, defendant told the court that he would be "making some offers of proof in sort of a multi-level fashion." Specifically, defendant said that he would be splitting Bedard's testimony into two separate offers of proof. In the first, defendant explained, Bedard would testify about his own training and experience and would describe the scientific principles underlying his analysis, as well as the research on which he relied. In his second offer of proof, Bedard would apply those principles to the facts of defendant's case and testify to his own conclusions and opinions. Defendant also told the court that "[w]e will be arguing that * * * if the nature of his testimony is deemed scientific, it does meet the higher standard * * * set forth in *State v. Brown* and *State v. O'Key*. We will also separately be arguing that it should be considered as nonscientific expert opinion testimony[.]"

Bedard's testimony was laden with references to, and explicit reliance on, scientific principles and research. For example, in Bedard's first offer of proof, he described the science underlying the human body's physiological reactions to life-threatening situations. In doing so, he discussed brain chemistry and functioning and how those changed when a person experienced extreme fear, stress, and anxiety. He further described how those physiological factors produced symptoms that could be used to determine, after the fact, whether it was more likely that a person killed someone in self-defense or as an act of premeditated murder.

At various points, Bedard tied his understanding of human physiology and his analysis of whether a person accused of murder had acted in self-defense to scientific and sociological research. For example, defendant asked Bedard, "[A]s an expert, what makes you confident that what you're doing here is reliable and valid?" Bedard replied, "Because I'm looking at the research." When asked later whether his work had been validated, Bedard replied, "My validation is really based on the validation of the research that I look at. * * * We know that there are certain things that do occur under periods of high stress and high arousal. That

provides for a hearing to determine the admissibility of a witness's testimony outside the presence of the jury.

is—those are validated studies. They're peer reviewed and they're validated studies. I appeal to those." He went on to explain that "this case is not a scientific study. It is relying on scientific studies to propose that something is more likely than not."

At the conclusion of the first offer of proof, defendant asked Bedard if he could provide the same testimony, but without the references to science and research:

"Q. If I asked you to exclude the scientific terminology, the reference to research, and that sort of thing, and only talk about what you know and understand and have concluded based on your training and experience, would you be able to do that?

"A. Yes. I think so.

"Q. Okay. And would you be able to give the same background information, albeit without some of the supporting research?

"A. Yes."

In the second offer of proof, Bedard applied the principles that he had outlined in the first offer of proof to the facts of defendant's case and stated his opinion that defendant's self-reported reactions were "more consistent with a self-defense [killing]." At the conclusion of that portion of testimony, defendant asked, "If I asked you again to strip away the scientific discussion, the discussion of research, and only testify based on your training and experience, would you be able to testify to the same opinions and conclusions?" Bedard responded, "Yes."

At the conclusion of the OEC 104 hearing, defendant told the court to consider the preceding testimony as four separate offers of proof. In addition to the two offers he had just made, defendant told the court that, should the court determine that Bedard's testimony was "scientific evidence," and therefore subject to the heightened admissibility requirements for such evidence, defendant also offered the same testimony "stripped" of the references to science and research as separate, "non-scientific" offers of proof.

As relevant to this appeal, in defendant's initial offer of substantive testimony regarding Bedard's training

and expertise, defendant told the court that, "if that offer were deemed inadmissible because it doesn't meet the scientific evidence admissibility standard," he offered that same testimony, but "stripped of its references to research and science, and that sort of thing." Defendant made the same dual offer as to Bedard's second substantive component of testimony regarding the application of Bedard's training and expertise to the facts:

> "If * * * for any reason that's deemed not to be admissible, that same portion, the case specific portion, I would submit as an offer of proof without the underlying references to science, research, that sort of thing, * * * I would submit to the Court that if we strip out those portions of scientific vocabulary, it is subject to the non-scientific expert opinion standard and admissible under that standard."

Defendant did not further describe to the trial court what portions of Bedard's testimony would, and would not, be included in his nonscientific offers of proof.

Following the hearing, the trial court ruled in favor of the state, concluding that, under OEC 702, Bedard was not qualified as an expert to testify on the proposed subject matter and that the proffered testimony would not be helpful to the jury.[2] The trial court concluded further that the testimony was "not admissible scientific evidence, and that as non-scientific evidence, it has so many other objections to it that it would render it inadmissible as well."

On appeal, defendant assigns error to the trial court's exclusion of his proposed expert witness, arguing that the trial court erred in concluding both that Bedard was unqualified and that his testimony would not be helpful to the jury. Importantly, however, defendant does not challenge the trial court's ruling that Bedard's testimony was "not admissible scientific evidence." Rather, in arguing that the trial court erred, defendant states that he "relies" on his "two offers of proof that characterize Bedard's knowledge as specialized rather than scientific." We understand that to mean that defendant assigns error only to the exclusion of

---

[2] OEC 702 states that, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

those "two offers of proof that characterize Bedard's knowledge as specialized rather than scientific."

However, defendant does not sufficiently identify in the record the nonscientific offers of proof that the trial court excluded. Although Bedard asserted that, if asked, he could provide the same testimony without the references to science and research, he never gave that testimony or, significantly, explained how he would reach his same conclusions without relying on scientific principles. Defendant's assignment of error, then, assigns error to the exclusion of testimony that is not before us, and, as explained below, we are unable to identify the substance of that proposed testimony from defendant's arguments or citation to the record. In this case, that assignment of error is insufficient to demonstrate that the trial court erred.

ORAP 5.45(4)(a)(iii) states:

"If an assignment of error challenges an evidentiary ruling, the assignment of error must quote or summarize the evidence that appellant believes was erroneously admitted or excluded. If an assignment of error challenges the exclusion of evidence, appellant also must identify in the record where the trial court excluded the evidence and where the offer of proof was made[.]"

OEC 103(1)(b) further states that error may not be predicated upon a ruling which excludes evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." The purpose of the rule requiring an offer of proof when a trial court excludes testimony "is to assure that appellate courts are able to determine whether it was error to exclude the evidence and whether any error was likely to have affected the result of the case." *State v. Morgan*, 251 Or App 99, 105, 284 P3d 496 (2012) (internal quotation marks omitted).

Accordingly, defendant's assignment of error on appeal must identify the "substance of the evidence" he asserts was improperly excluded, OEC 103(1)(b), so that, on appeal, we are able to "determine whether it was error to exclude the evidence and whether any error was likely to have affected the result of the case." *Morgan*, 251 Or App at

105. A defendant's "failure to make an offer of proof disclosing 'the substance of the evidence' at issue" may be "fatal to the assignment of error." *State v. Babson,* 249 Or App 278, 292-93, 279 P3d 222 (2012), *aff'd,* 355 Or 383, 326 P3d 559 (2014) (quoting OEC 103(1)(b)).

As noted, defendant does not assign error to the trial court's conclusion that Bedard's testimony was "not admissible scientific evidence." *See State v. O'Key,* 321 Or 285, 899 P2d 663 (1995) (establishing heightened admissibility requirements for "scientific" expert testimony); *State v. Brown,* 297 Or 404, 687 P2d 751 (1984) (same). As a result, defendant's assignment of error must adequately parse out the scientific evidence and identify the nonscientific evidence in order for us to determine if the trial court erred when it excluded that claimed nonscientific evidence. But defendant's "non-scientific" offer of proof, as such, failed to adequately identify "the substance of the evidence" that defendant now asserts was excluded in error. OEC 103(1)(b). Bedard's reply affirming that he could "strip away the scientific discussion, the discussion of research, and only testify based on [his] training and experience" similarly did not sufficiently identify the substance of that hypothetical testimony.

The crux of Bedard's proffered testimony was his description of the chemistry and functioning of the brain and various physiological reactions related to changes in brain chemistry, and his opinion that, based on those physiological reactions, it was likely that defendant acted in self-defense. Bedard testified that his understanding of those physiological reactions largely came from science and research with which he was familiar, that the validity of his analysis was tied to the validity of that science and research, and that, in drawing his conclusions, he "rel[ies] on scientific studies to propose that something is more likely than not." Defendant did not below, nor does he on appeal, describe what the substance of Bedard's testimony would be if he were to omit any reference to that science or research. Defendant's description of his "non-scientific" offer of proof as the same testimony, but "stripped of its references to research and science, and that sort of thing," is inadequate to inform us of what evidence was improperly excluded. We cannot identify the

nonscientific testimony relied upon from an offer of proof that is so heavily laden with seemingly scientific terms and reliance on scientific research and principles.

Accordingly, defendant has not adequately identified the proposed testimony that he asserts the trial court erred in excluding, and, thus, he has failed to persuade us that the trial court erred.

Affirmed.