DeVORE, P. J.
*302 *451 Defendant appeals from a judgment of conviction for two counts of first-degree sexual abuse, ORS 163.427. The charges were based on allegations that defendant sexually abused his wife's two grandsons. Defendant assigns error to the trial court's ruling that excluded the potential testimony of defendant's wife that her daughter-the mother of the two victims-had been sexually abused by another man. The trial court excluded the testimony of defendant's wife on grounds that her testimony about the sexual abuse of her daughter would have been improper "bolstering" and, alternatively, was unduly prejudicial under OEC 403. We conclude that the judgment must be affirmed because defendant did not make an offer of proof sufficient to permit us to determine whether any error in excluding the testimony was prejudicial.[1]
We recount only those facts necessary to frame the trial court's ruling. Defendant married his wife, Patricia, when her daughter KF was about eleven or twelve years old.[2] Some years later, in 2001 and 2005, KF had two sons, J and W. From the time of their birth, defendant acted as their grandfather. In December 2011, KF and her husband parked their fifth-wheel trailer, in which the family lived, on the property at the home of defendant and Patricia. The boys J and W frequently slept in the front room in the grandparents' home. Sometime after Christmas or in early January 2012, W, then age six, told his mother, KF, that he had a nightmare and had crawled into bed with his grandparents. W said that defendant put his hand inside W's pajamas and rubbed his genitals. When KF asked J, then age 10, if defendant had done anything to J, J recounted that, when he had been sleeping on a couch, someone had taken J's hand and held it to another's pubic hair and privates. J said that, when he opened his eyes, he saw defendant moving away.
KF immediately told her mother Patricia, who came to hear the boys repeat the disclosures to her. The next day, *452 the boys repeated their disclosures to their father. Later that month, both boys gave videotaped statements to a forensic interviewer at Juliette's House. The state charged defendant with two counts of first-degree sexual abuse, ORS 163.427, and three counts of harassment involving a sexual or intimate part, ORS 166.065(4)(a).
Before trial, the state moved to exclude, among other things, any evidence of sexual abuse of the boys' mother, KF. Defense counsel responded that, having already conferred with defendant, he did not intend "to raise those issues in [defendant's] case." The trial court approved, indicating "So ordered." Just before Patricia testified, the state asked the court to remind her of the several matters subject to the motion in limine , including the sexual abuse of KF. Defense counsel again responded that defendant did not want to ask Patricia about the sexual abuse of KF, but defense counsel said:
"On the majority of that I certainly don't have any objection. The prior sexual abuse of [KF] I don't want to address that. It may come into play, Your Honor, because there was, Patricia, wife, was in a relationship where the father of the children committed sex abuse against the kids. And so that could create a situation where she would be hyper vigilant.
"And I think, I am not saying the Court should let [Patricia] talk about the sexual abuse of [KF], but that could go to her, kind of her ability to essentially would be to protect. But, Your Honor, I guess if the question is proposed to her did you ever see signs of sexual abuse, and the answer is no, and then the follow-up question was would you pay special attention to that and her answer was yes, it seems to me that would come in, and then she would be able to explain why she would pay super close attention to whether or not in this instance *303 her husband would be involved in sexual abuse of the grandchildren."
The prosecution responded, allowing that some testimony might be permissible other than that about KF's abuse:
"[PROSECUTEOR]: Well, it sounds like that kind of line of questioning to [Patricia] is designed to bolster her credibility isn't really appropriate I don't think. And the only reason to do, he can certainly ask her if she is someone *453 who kept an eye out for sex abuse. And I think, I don't even know if he should go there. But I think he can certainly ask her if she saw any signs of sex abuse. (Inaudible).
" * * * * *
"[PROSECUTOR]: I just think that is inappropriate bolstering of the witness.
"THE COURT: Yes.
"[PROSECUTOR]: And it is going into an area that is more prejudicial to the State than it is probative."
(Emphases added.) Defense counsel argued that evidence of KF's abuse could become permissible and would lend credibility to Patricia's testimony:
"Your Honor, I don't think it is bolstering a witness. I mean certainly it may make her testimony more credible, but not because she has seen sex abuse in the past. The reason it would make her more credible is because she has learned from the past and then responded accordingly."
The trial court tentatively excluded the line of questioning but left open the possibility that the state could "open the door" to such testimony:
"THE COURT: Well, excuse me [defense counsel], I can see how the State could open the door for that line of questioning. But I will let you make your offer of proof . I am not going to allow that line of questioning both for the argument of the State and [OEC] 403 which would be unfair prejudice.
"And it is bolstering, clearly bolstering. But the door could easily be opened. And I am not going to try anybody's case here, but you can certainly (sic) outside of the presence of [the] jury if you think it's been opened, the door, I will allow it if the door has been opened, okay?
"[DEFENSE COUNSEL]: Yes, Your Honor."
(Emphasis added.) Despite the court's invitation, defendant made no formal or informal offer of proof, then or later, as to what Patricia would testify about the sexual abuse of KF, Patricia's experience at the time of KF's abuse, or the resulting nature of Patricia's enhanced sensitivity to the potential for sexual abuse of other children.
*454 When Patricia took the stand, the court reminded her, outside the presence of the jury, that she should say "nothing about sex abuse" of KF. On direct examination by the state, Patricia described the family, the home, and the boys' disclosures. The state did not ask if she witnessed inappropriate contact, if she saw signs of sexual abuse, or if she would pay special attention to the prospect of sexual abuse.
On cross-examination by the defense, Patricia testified that she had never seen defendant act sexually inappropriate with W or with J. Defense counsel inquired whether she had noticed any change in the boys' behavior toward her or defendant in the last two or three weeks before the disclosures, while staying at the house. She replied that the boys acted as they always did. Similarly, on cross-examination by the defense, Police Chief Graven recounted that Patricia had told him that she had not noticed a change in the behavior of the boys, after the abuse but before their disclosure. She had told him that the boys had been watching television with defendant.
At trial, the state presented, among other evidence, the testimony of W and J themselves; the videotaped interviews of W and J conducted by the forensic interviewer at the Juliette House, recounting the touching; the testimony of KF and the boys' father, recounting the boys' disclosures; the testimony of T, a friend of J's, recounting J's disclosure of touching; the testimony of Chief Graven and a detective, Arguello, regarding recorded statements of defendant. In those statements and at trial, defendant denied sexual contact and explained that he had moved W in bed and tucked J's arm under his covers. The *304 jury found defendant guilty on two counts of first-degree sexual abuse, one regarding W and one regarding J.[3]
On appeal, defendant assigns error asserting that the "trial court erred by excluding evidence of the prior sexual abuse of [KF]." Defendant argues that the evidence of sexual abuse of KF would have explained potential testimony that Patricia "had a heightened vigilance regarding *455 child abuse." The state responds that defendant's argument in the trial court, without a further offer of proof, was insufficient to show reversible error in this case. On the merits, the state offers to concede error insofar as the trial court excluded Patricia's testimony on the basis of "bolstering," but the state argues that the trial court properly excluded the testimony as unfairly prejudicial under OEC 403. Assuming without deciding that the trial court erred, we agree with the state's initial argument that defendant failed to make a record to provide this court with the ability to determine whether any error was reversible error. In order to explain that conclusion, we address both the role of an offer of proof and the requirement of prejudicial error.
Ordinarily, when the trial court has excluded testimony, the proponent of the disputed evidence must make an offer of proof. State v. Affeld , 307 Or. 125, 128, 764 P.2d 220 (1988). The offer of proof serves several purposes. It permits the trial court to reconsider its ruling in view of the actual evidence to be offered. State v. Smith , 319 Or. 37, 44, 872 P.2d 966 (1994). The offer of proof permits the appellate courts to decide whether error occurred. And, ultimately, the offer permits the appellate courts to determine whether an error was likely to have affected the result of the case so as to constitute prejudicial error. Id. ; see State v. Morgan , 251 Or. App. 99, 105, 284 P.3d 496 (2012) (an offer of proof shows whether an error "was likely to have affected the result of the case" (internal quotation marks omitted) ).
Error is not always sufficient to warrant reversal. We will affirm a judgment of conviction notwithstanding the erroneous admission or exclusion of evidence if there is little likelihood that the error affected the verdict. State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). The source of that rule is in Article VII (Amended), section 3, of the Oregon Constitution, which requires this court to affirm a judgment if, in the opinion of this court, the judgment achieved the correct result, even if error was committed. Affeld , 307 Or. at 128, 764 P.2d 220.
To decide whether an error was harmless, we assess the error in light of other evidence in the record pertaining to that issue. If the evidence that was erroneously admitted *456 or excluded relates to a "central factual issue" in the case, it is more likely to have affected the jury's determination than if it deals with a tangential issue. State v. Marrington , 335 Or. 555, 566, 73 P.3d 911 (2003). If, however, the disputed evidence has little direct relationship to the issues to have been determined by the jury, then there is less likelihood that the error affected the verdict. Id.
Because that sort of assessment is necessary for "reasoned decision," an appellate court requires that the record in the trial court be adequate. In some cases, that record can be adequate "only if an offer of proof is made." Affeld , 307 Or. at 129, 764 P.2d 220. To like effect, OEC 103(1) provides, in part:
"Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:
" * * * * *
"(b) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."
Under that rule, no offer of proof is necessary when the nature of the excluded evidence is adequately reflected in the argument of counsel to the court. State v. Strickland , 265 Or. App. 460, 463, 335 P.3d 867 (2014). Likewise, no offer of proof is necessary when the trial court refuses to *305 allow an offer to be made. Affeld , 307 Or. at 129, 764 P.2d 220.
The requirement for an offer of proof is not burdensome. The offer may be formal or informal. An offer of proof may occur outside the presence of the jury through an examination of the witness on the stand or it may occur in narrative form through a description by counsel of the witness's intended testimony. State v. Hughes , 192 Or. App. 8, 19, 83 P.3d 951 (2004), rev. dismissed , 338 Or. 17, 107 P.3d 27 (2005). Whether in testimony, in a narrative summary, or, at the least, in descriptive argument, an offer of proof remains essential in order to permit an appellate court to determine whether there is reversible error. See *457 State v. Khoshnaw , 286 Or. App. 246, 250-53, 399 P.3d 1083, rev. den. , 362 Or. 208, 407 P.3d 815 (2017) (failure to make offer of proof prevented determination that testimony was improperly excluded); State v. Clark , 284 Or. App. 197, 211-12, 392 P.3d 337, rev. den. , 361 Or. 803, 401 P.3d 1184 (2017) (failure to make offer of proof precluded determination of reversible error in excluding testimony).
In this case, in order to determine whether error was harmless, we would need to be able to evaluate the excluded testimony by Patricia about sexual abuse of KF by another man in the context of the admitted evidence about the alleged sexual abuse by defendant of W and J. But, despite the court's statement that it would entertain an offer of proof, defendant did not make one, either with a narrative statement about Patricia's potential testimony or with her actual testimony in the jury's absence. Absent such information, defendant has not provided this court with a record from which we can determine whether the error-if any-was harmless. See Affeld , 307 Or. at 128, 764 P.2d 220 (regarding importance of offer of proof); see also Walter v. Echanis , 163 Or. 148, 154-55, 95 P.2d 979 (1939) (absent an offer of proof, the court will not speculate about testimony nor presume error); Khoshnaw , 286 Or. App. at 252-53, 399 P.3d 1083 (absent an offer of proof as to nonscientific matters, the defendant failed to identify the evidence improperly excluded); Clark , 284 Or. App. at 211-12, 392 P.3d 337 (in the absence of an offer of proof, any statistical evidence to which witness would have testified is merely hypothetical).
Affirmed.

We reject without discussion defendant's remaining assignments, which assert plain error.

We refer to defendant's wife by her first name for the sake of clarity and refer to her daughter and grandsons by initials as a matter of privacy.

The three counts of harassment had been based on alleged spanking contact with the boys and their friend T. The jury acquitted defendant of those charges.