Argued and submitted February 11, reversed and remanded May 13, 2020

In the Matter of E. J.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

E. J.
and K. S.,
*Respondents,*

*v.*

M. T. J.,
*Appellant.*

Multnomah County Circuit Court
19JU03827;
Petition Number 113693;
A172295

466 P3d 702

Father appeals a juvenile court judgment taking jurisdiction over his daughter. Among other assignments of error, he contends that the trial court erred in granting mother's motion *in limine* to limit father's presentation of evidence about mother to the confines of the jurisdictional petition. *Held*: The trial court erred in granting mother's motion on the basis that evidence of facts not pleaded in the petition as grounds for asserting jurisdiction is categorically precluded as a matter of law. Because, under the circumstances, it would have been futile for father to make an offer of proof, father adequately preserved his claim of error. And, the error was prejudicial because it deprived father of his rights under ORS 419B.875(2)(c) to fully participate in the jurisdictional hearing, rendering the proceedings fundamentally unfair.

Reversed and remanded.

Paula J. Kurshner, Senior Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services, argued the cause and filed the briefs for appellant.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Christa Obold Eshleman argued the cause and filed the brief for respondent E. J.

Ginger Fitch filed the brief for respondent K. S.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DEHOOG, J.

Reversed and remanded.

**DEHOOG, J.**

Father appeals a juvenile court judgment establishing jurisdiction over his child, E, raising 24 assignments of error. In his first five assignments of error, father contends that the court erred in precluding him from presenting or eliciting evidence at the jurisdictional hearing related to mother's history and instead limiting the evidence to the facts of the petition, which, essentially, implicate only father's conduct.[1] DHS, mother, and child respond, variously, that father failed, in full or in part, to preserve his arguments; that, in any event, the court's ruling was correct; and that, even if the court erred, the error was harmless. As we explain below, we conclude that the court committed reversible error in granting mother's motion *in limine* to exclude father's evidence, and, on that basis, we reverse and remand for further proceedings. That disposition obviates the need to address father's remaining assignments of error.[2]

The circumstances surrounding DHS's involvement with this family are somewhat unusual. However, we limit our recitation of the facts to those needed as context for the narrow legal questions addressed in this opinion. Unless otherwise noted, those facts are undisputed.[3]

E was born in November 2012 in North Carolina; mother and father were separated around that time.[4] Neither parent had a formal custody order, but E has been in father's primary care since she was between one and two

---

[1] As described below, the petition's allegations as to mother relate only to her inability to protect E from father's behavior and from exposure to domestic violence in the home and her inability to assert custody over E under the circumstances.

[2] Father's first five assignments of error are set out below. 304 Or App at 154 n 8. In his remaining assignments of error, father contends that the juvenile court erred in failing to *sua sponte* strike certain witnesses' statements as impermissible vouching (assignments 6 through 16), ruling that E was within the court's dependency jurisdiction (assignments 17 through 23), and ordering father to submit to a psychological evaluation (assignment 24).

[3] Father asks us to exercise our discretion under ORAP 5.40(8)(b) to make "several factual findings anew on the record." We need not consider that request for limited *de novo* review as it does not, in any event, implicate the legal issues that we address in this appeal.

[4] Mother and father met in Nevada in 2009.

years old.[5] Mother has seen E only one time since then (for "about a week"), although the two sometimes spoke by phone or Skype.[6] By 2017, father and E had moved to Oregon. Mother now lives in Arizona.

On May 21, 2019, the Department of Human Services (DHS) filed a dependency petition asserting that E was within the juvenile court's jurisdiction due to conditions and circumstances endangering her welfare. *See* ORS 419B.100(1) (setting out bases for dependency jurisdiction). With regard to mother, DHS alleged that mother "has been unable to protect [E] from the father's behavior," that she "has been unable to successfully assert custody to protect [E]," and that mother "was subjected to domestic violence by the father and [she] has been unable to protect [E] from exposure to father's violence." As to father, DHS alleged that E "has been injured by father's physical outbursts"; father "has anger control problems that interfere with his ability to safely parent [E]"; E "has been exposed to domestic violence by the father"; father "has engaged in a pattern of domestic violence with others [with whom] he has had a relationship" and "has not successfully addressed his violent behavior or ameliorated this conduct"; father "does not understand or acknowledge the impact his domestic violence has on [E]"; and father "does not understand [E's] need for a calm, violence-free, and structured home."

The petition was adjudicated over five days in September 2019. At the start of the jurisdictional hearing, mother made an oral motion *in limine*:

"Your honor, I'm making a motion to limit the father's testimony. In part, the petition alleges three things as to my client which really go to her ability to protect [E] from violence in the home and her ability to assert custody of [E] given the allegations. My understanding is that the father may be making allegations against the mother which (unintelligible) inaccurate, irrelevant, and *they violate my client's right to due process, so I'm asking that the testimony*

---

[5] Father testified that E had been in his primary care "since she was approximately 13 months old." According to mother, E was "[a]lmost 2" when E left her care.

[6] Before the filing of the dependency petition in May 2019, mother had not seen or spoken to E for eight months.

*that's being provided about my client stay within the confines of the petition that's been alleged."*

(Emphasis added.) Father objected, stating:

"The issue before the Court is what is the safety concerns regarding both parents; both parents are listed on the petition, part of our case, Your Honor, is what DHS chose not to do, what DHS chose not to investigate, DHS'[s] hasty decision. And I think part of that is going to be all of the information that they could have found out about the mother when they found out about the mother when they made their plan. So I do think that is relevant, her history is relevant to this case."

The colloquy between the court and the parties continued:

"[MOTHER'S COUNSEL]:   And my client would respond by saying that the agency did due diligence and I see cases that it's conducted, my client was vetted, a recommendation was made for placement, there are no safety concerns, and I think this is not a domestic relations case and I would argue that *we need to keep again the evidence confined to what's been plead [sic] in the petition.*

"* * * * *

"[CHILD'S COUNSEL]:   Thank you. As child's attorney we support mother's motion in limine, believing that as she stated this is not a domestic relations case, this is a petition filed by the State and the State is intervening to assert that there are jurisdictional bases and bases that place [E] in danger. At this time *I believe that the evidence should be limited to the State's petition*, it's not a free-for-all, this is the time and place to adjudicate this petition.[7]

"* * * * *

"[FATHER'S COUNSEL]:   Your Honor, as the parties and Court is aware, *the Court is never limited just to the allegations in the petition. Whatever evidence–*

"THE COURT:   Well, I think I beg to differ; *I think there are appellate cases that say when you go beyond the terms of a petition that's basis for reversal of assumption of jurisdiction.* Anyone argue with that? I told you I keep up on recent cases and there is a recent case that I think does say that.

_____

[7] Counsel for DHS agreed with mother's and child's positions.

"[FATHER'S COUNSEL]:   *Your Honor, I'm referring to evidence that comes in at trial*, for instance, if there were testimony that came in when there was only issues of substance abuse if testimony came in through the parties that, for instance, that touched on mental health when it wasn't alleged, the Court wouldn't just ignore that if it came into evidence; I believe the Court would consider that–

"THE COURT:   What's the difference between this and that? What's the difference?

"[FATHER'S COUNSEL]:   Between?

"THE COURT:   The two hypotheses you are putting forward?

"[FATHER'S COUNSEL]:   Your Honor, I think again part of our case is that DHS has not fully investigated the mother; that when they began this they made decisions hastily, that they chose not to look into information against the mother when they made decisions. And they still have through that narrow tunnel vision have proceeded in this case.

"THE COURT:   Okay.

"[FATHER'S COUNSEL]:   So we do think that is–

"THE COURT:   Okay. The motion in limine is granted."

(Emphases added.)

Later in the hearing, when cross-examining mother, father's counsel made an offer of proof that, but for the court's ruling on the motion *in limine*, counsel would have elicited information about the gaps in time between mother's contacts with E when E was in father's care, and about mother's opportunities to see E. Counsel stated that the evidence

"would document different stays at treatment centers for drug treatment; also a hospitalization in a mental health facility which I think would account for times when she was not available to have contact with her daughter. And I think that would be impeachment material against that. In essence, there were times that she wasn't able to reach out to her daughter because of things that were going on in her life, not that [father] was preventing her from doing so."

Still later, father's counsel made an offer of proof that, through cross-examination of a DHS child-welfare worker, Calvin, father "would be able to show inconsistent statements by the mother based on information that has been provided in an August 15th, 2018, assessment."

At the conclusion of the hearing, the juvenile court found that DHS had proved all of the allegations in the petition by a preponderance of the evidence and concluded that E was within the court's jurisdiction. Regarding mother, the court found that she "in effect, admits [that the allegations regarding her] are true *** with the addition that the only way those conditions can be ameliorated is with the Court's involvement and the Department of Human Services involvement." The court expressly found father not credible with respect to his denial of domestic violence—noting "his selective memory, how he can remember details in some instances and not remember a restraining order he filed," and that "[h]is tone of voice, his body language tells me when I know he's not telling me the truth." Continuing on to disposition, the court authorized DHS to place E with mother in Arizona, with regular phone or Skype visits with father, and that they begin family counseling. The court also required father to enroll in parenting classes, to engage in anger management, domestic violence, and batterers' intervention programs as directed by DHS, and to undergo a psychological examination.

The court entered a judgment of jurisdiction and disposition in accordance with those oral rulings, which father now appeals.

Because they raise "essentially the same legal questions," father presents a combined argument with respect to his first five assignments of error, focusing on the court's allowance of mother's motion *in limine* to limit father's testimony.[8] As refined and clarified in his reply brief, father

---

[8] Father states those assignments of error as follows:

(1) "The trial court erred in granting mother's motion in limine."

(2) "To the extent the trial [court] ruled that evidence about mother's history, current circumstances, and fitness was not relevant, the trial court erred."

(3) "The trial court erred in denying father the right to testify or otherwise present evidence as to mother's fitness."

contends that the court's basis for granting the motion—specifically, that admission of evidence that "go[es] beyond the terms of a petition" is a "basis for reversal of assumption of jurisdiction"—was legally erroneous and that the error was not harmless, because it denied father his right to call and cross-examine witnesses, participate in the hearing, and present a defense as provided under ORS 419B.875(2), rendering the proceeding fundamentally unfair.

DHS's initial response is that father's claims of error are unpreserved because he failed to make an adequate offer of proof with respect to what, in DHS's view, was the juvenile court's exclusion of father's evidence as *irrelevant*, and because he never argued to the juvenile court that he would be deprived of his rights under ORS 419B.875(2) or denied a fundamentally fair proceeding if the motion were to be granted. As to relevance, DHS argues that, because the issue before the court was whether DHS could prove the allegations of the petition, and, as to mother, those allegations involved only her inability to protect E from father, any evidence about mother's history was not relevant to the allegations in the petition, and, therefore, the court did not err in granting mother's motion. Finally, DHS summarily argues that, even if the court did err, the error was harmless, "because there was little likelihood that evidence of mother's history would have affected the jurisdictional determinations."

In child's view, petitioner preserved his second, third, and fourth assignments of error, to the extent of his later offers of proof. But, as to those preserved assignments, child contends that the court correctly excluded the evidence (of mother's "historical personal problems and general 'inconsistent statements'") because it was "not shown to be relevant to allegations in the petition." And, in any event, child argues, father is not entitled to reversal because any error was harmless.

Mother adopts DHS's and child's arguments and further adds an argument under OEC 403, *viz.*, that "the

---

(4) "The trial court erred in denying father the opportunity to cross-examine mother and other witnesses as to mother's fitness."

(5) "The trial court erred in denying father a fundamentally fair proceeding."

juvenile court's decision to limit father's testimony and cross-examination was within the juvenile court's discretion in balancing whether that evidence had the danger of being unduly prejudicial against the probative value of its possible impeachment."

We agree with father. It is apparent from the record that the juvenile court applied an erroneous view of the law in granting mother's motion *in limine*. As noted, mother's motion requested that, to protect her "due process" rights, "the testimony that's being provided about [mother] stay within the confines of the petition that's been alleged." After father objected, arguing that evidence of mother's history was relevant to the proceedings, mother again stressed that the evidence needed to be "confined to what's been plead [*sic*] in the petition." Child concurred, stating, "the evidence should be limited to the State's petition." At that point, father attempted to explain—"the Court is never limited just to the allegations in the petition"—but the court cut him off, stating, "*I think there are appellate cases that say when you go beyond the terms of a petition that's basis for reversal of assumption of jurisdiction.*" (Emphasis added.) Responding to the court's comment, father attempted to clarify

> "I'm referring to *evidence that comes in at trial* for instance, if there were testimony that came in when there was only issues of substance abuse if testimony came in through the parties that, for instance, that touched on mental health when it wasn't alleged, the Court wouldn't just ignore that if it came into evidence; I believe the Court would consider that–"

(Emphasis added.) The court again interrupted father and, ultimately, granted mother's motion.

From that context, we understand the court to have ruled based on our line of cases beginning with *Dept. of Human Services v. G. E.*, 243 Or App 471, 260 P3d 516, *adh'd to as modified on recons*, 246 Or App 136, 265 P3d 53 (2011),[9] and not as a matter of relevance. In *G. E.*, we held that the court may not *continue dependency jurisdiction* based on

---

[9] DHS, mother, and child fail to identify any other case, or line of cases, that the court could have been referencing in its ruling, and we are not aware of any.

facts not alleged in or inferable from the jurisdictional petition, where reliance on those facts affects the substantial rights of the parent. 243 Or App at 479-81; *id*. at 479 (noting that "[i]t is axiomatic * * * that a juvenile court may not continue a wardship if the jurisdictional facts on which it is based have ceased to exist" and "[i]t is equally axiomatic that a juvenile court may not continue a wardship based on facts that have never been alleged in a jurisdictional petition" (internal quotation marks and citations omitted)). Thus, in *G. E.*, we held that the juvenile court erred in denying the mother's motion to dismiss jurisdiction based on facts extrinsic to the jurisdictional judgment. *Id*. at 483; 246 Or App at 139 (modifying disposition on reconsideration).

We subsequently applied the reasoning of *G. E.* to the juvenile court's decision to *change a permanency plan* for a child from reunification to adoption. *Dept. of Human Services v. N. M. S.*, 246 Or App 284, 266 P3d 107 (2011). *See also Dept. of Human Services v. N. T.*, 247 Or App 706, 715-16, 271 P3d 143 (2012) ("[I]f a court, in [changing the child's permanency plan from reunification to adoption] under ORS 419B.476(2)(a), relies on facts other than those explicitly stated or fairly implied by the jurisdictional judgment, and doing so affects the substantial rights of a parent, the determination cannot be sustained.").

Those cases thus prescribe limits, predicated on concerns of due process, on the use of "extrinsic facts" as a basis for establishing or continuing dependency jurisdiction or for changing a child's permanency plan when the existing plan is reunification. The cases do not announce an evidentiary rule—that is, contrary to the juvenile court's understanding, *G. E.* and the cases following that decision do not prescribe the *evidence* that can be admitted in a jurisdictional hearing to prove the facts alleged in a petition. Said another way, our case law does not categorically preclude the admission of evidence of facts not pleaded as a basis for asserting jurisdiction, and the court here erred in concluding otherwise.[10]

---

[10] It is possible that mother led the court down that path by moving to exclude father's evidence on the ground that it would "violate mother's right to due process " unless confined to the allegations of the petition.

Indeed, in arguing in *N. M. S.* that, in making the permanency decision, the court was "not limited solely to the facts relied upon in the jurisdictional judgment," DHS remonstrated that "the juvenile court 'cannot simply ignore' serious parental deficiencies" that become apparent during a permanency hearing but that were not the basis upon which jurisdiction was sought. *Id.* at 297, 298. Although we rejected DHS's argument that the jurisdictional judgment did not constrain the court's decision process, we explained that "*G. E.* does not require the court to ignore such deficiencies; rather, it envisions amendment of the jurisdictional petition in those circumstances"—in circumstances, that is, where evidence admitted at the hearing indicates bases for jurisdiction not alleged in the petition at issue and reliance on that information would affect the substantial rights of a parent. *Id.* at 298 (citing *G. E.*, 243 Or App at 481). *See* ORS 419B.809(6) ("The court, on motion of an interested party or on its own motion, may at any time direct that the petition be amended."). Thus, we have recognized the possibility that *evidence* of extrinsic facts may come in during a dependency proceeding, even though, absent an amendment to the underlying petition, those facts may not be used to establish or maintain jurisdiction or to determine whether to change the child's permanency plan away from reunification.

Whether that type of extrinsic evidence may be excluded on the basis of relevance—or other grounds—is a different, more nuanced question, but that is not what happened here. Although father started to articulate a theory of relevance, the court stopped him and, instead, categorically ruled that, as a matter of law, father could not present *any evidence* about mother outside "the confines of the petition"; that is any evidence other than that related to the specific facts alleged in the petition—that mother had failed to protect E from father and from exposure to domestic violence.

We also disagree with DHS that we must reject father's argument because he failed to make an offer of proof and, therefore, did not preserve his arguments for appeal.[11] "Making an offer of proof is ordinarily part of preserving an

---

[11] As noted above, child and mother concur, in part, in DHS's argument.

argument that the trial court erred in excluding evidence." *State v. Haugen*, 349 Or 174, 191, 243 P3d 31 (2010). As we and the Supreme Court have often observed, the purpose of that rule "'is to assure that appellate courts are able to determine whether it was error to exclude the evidence and whether any error was likely to have affected the result of the case.'" *Id.* (quoting *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988)); *see also, e.g., State v. Krieger*, 291 Or App 450, 455, 422 P3d 300, *rev den*, 363 Or 599 (2018) (same); *State v. Morgan*, 251 Or App 99, 105, 284 P3d 496 (2012) (same).[12]

However, the rule is not absolute. For example, "a challenge to exclusion of evidence may be preserved, notwithstanding the absence of an offer of proof, if the questions asked and the arguments presented to the court on the issue were adequate to inform the trial court of the substance of the evidence and its error in excluding it." *State v. Lasky*, 259 Or App 307, 315, 314 P3d 304 (2013) (internal quotation marks, brackets, and citations omitted); *see also State v. Strickland*, 265 Or App 460, 463, 335 P3d 867, *rev den*, 356 Or 517 (2014) (holding that the state adequately preserved its challenge to court's allowance of the defendant's motion *in limine* to exclude evidence, where prosecutor did not make an offer of proof other than to state that she wanted to cross-examine the defendant as to "inconsistencies" in his affidavit, because "the context was adequate to inform the trial court of the substance of the evidence and its error in excluding it" (internal quotation marks omitted)). And, significantly for our purposes here, an offer of proof is not required in "those situations in which an offer of proof is impossible because of a trial court's refusal to allow the offer of proof to be made." *Affeld*, 307 Or at 129; *Krieger*, 291 Or App at 456 (noting same).

---

[12] OEC 103(1) provides:

"Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

"* * * * *

"(b) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

Given the circumstances here—and, especially, the nature of the juvenile court's ruling—this is akin to a situation in which the court did not allow an offer of proof to be made. As described above, the court curtailed father's attempt to argue the particular relevance of the evidence he wished to offer, instead reasoning that all such evidence was categorically excluded as a matter of law. Thus, although the court did not expressly refuse to allow an offer of proof, it would have been futile for father to offer one in the face of the court's ruling.

*Man-Data, Inc. v. B & A Automotive, Inc.*, 247 Or App 429, 270 P3d 318 (2011), if not precisely on point, is instructive. There, the issue was whether the trial court had properly precluded the individual defendants, as the corporate defendant's sureties, from challenging legal fees charged under a fee agreement between the corporate defendant and its former attorneys after the corporate defendant had defaulted. Concluding that an offer of proof was not required to preserve the defendants' claimed error, we explained:

> "The trial court, at least ostensibly, denied the individual defendants the opportunity to challenge the fees due by excluding any evidence in support of that defense. In general, to preserve error relating to the exclusion of evidence, a party must make an offer of proof. *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988). However, *when a trial court 'excludes an entire class of evidence by declaring, in advance, that it is inadmissible as a matter of law, the ruling renders a further offer futile.' State v. Olmstead*, 310 Or 455, 461, 800 P2d 277 (1990). In such cases, an offer of proof to preserve error is not required. *Id.*"

*Id.* at 438 n 5 (emphasis added).

In *Olmstead*, after noting that, "[w]hether an offer of proof [is] required depends on how [the appellate court] view[s] the nature of the state's motion and the trial court's ruling," *id.* at 459, the Supreme Court concluded that no offer of proof was required to preserve an objection to the trial court's ruling—in response to the state's pretrial motion to preclude the defendant from introducing evidence of insanity in a DUII prosecution—that the defense was unavailable as a matter of law, *id.* at 461. Among other considerations, the

court reasoned that the parties had "fully argued the merits of the legal issue," "there [was] nothing to suggest that an offer would have altered the court's analysis," and "an offer would not have been responsive to the state's motion, which framed only the broad legal issue." *Id.*

As in *Olmstead*, an offer of proof in this case "would give us no additional information that bears on the *legal* question," that is, whether, as a matter of due process, evidence of facts not pleaded in the jurisdictional petition are categorically subject to exclusion. *Id.* (emphasis in original). *See also State v. Hites-Clabaugh*, 251 Or App 255, 263 n 2, 283 P3d 402 (2012) (claim adequately preserved despite absence of formal offer of proof where, among other things, trial court declared "entire topic *** not a proper subject for expert testimony," thereby apparently excluding an "'entire class of evidence'" (quoting *Olmstead*, 310 at 461)). Accordingly, we reject DHS's contention that father's argument fails for lack of preservation.

Having concluded that the trial court erred in allowing mother's motion *in limine* on the basis that it did, and that father adequately preserved that claim of error, we turn to the question of whether father was prejudiced by the court's error. *See* OEC 103(1); *Cler v. Providence Health System-Oregon*, 349 Or 481, 490, 245 P3d 642 (2010) (court will reverse a judgment based on a trial court's error only if that error substantially affected a party's rights). Again, we are persuaded by father's view of the matter.

When the court's dependency jurisdiction is invoked, ORS 419B.875(2)(c) provides that "[t]he rights of the parties include, but are not limited to *** *[t]he right to call witnesses, cross-examine witnesses and participate in hearings*[.]" (Emphasis added.) Father argues that the court's error here was prejudicial because it deprived father of his rights under ORS 419B.875 to participate and present a defense at the jurisdictional hearing, thus rendering the proceedings fundamentally unfair. We agree. By categorically precluding father from offering any evidence of mother's circumstances beyond those alleged in the petition—without regard to relevance—father was denied his full participation rights under ORS 419B.875. *See Dept. of Human*

*Services v. D. J.*, 259 Or App 638, 646, 314 P3d 998 (2013) (holding that changing child's permanency plan in father's absence, over father's attorney's general objection, violated father's rights of participation under ORS 419B.875 and was thus reversible error; under the circumstances, "assertion by father's attorney that father wished to participate at the permanency hearing was adequate to establish that he was prejudiced by the denial of that right"). As a result of the court's ruling, father was left with no ability to present evidence that, if determined to be relevant and credited by the court, might have persuaded the court to reach a different decision.[13] The error was not harmless. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.

---

[13] As noted above, DHS, child, and mother assume that the juvenile court ruled that the evidence was irrelevant and contend that father has not demonstrated that *that* error, if any, was prejudicial. We have already rejected that view of the court's ruling.